*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   December 18, 2014                    104908
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

         v                                    MEMORANDUM AND ORDER

MICHAEL COLBURN,
                        Appellant.
_____


Calendar Date:   October 8, 2014

Before:   Peters, P.J., Lahtinen, Garry, Rose and Lynch, JJ.

                        _____


        John A. Cirando, Syracuse, for appellant.

        Derek P. Champagne, District Attorney, Malone (Glenn
MacNeill of counsel), for respondent.

                        _____


Lynch, J.

        Appeal from a judgment of the County Court of Franklin
County (Main Jr., J.), rendered January 9, 2012, upon a verdict
convicting defendant of the crimes of aggravated driving while
intoxicated and driving while intoxicated, and of the traffic
infractions of leaving the scene of an accident and failure to
keep right.

        Defendant was found guilty of aggravated driving while
intoxicated, driving while intoxicated, leaving the scene of an
accident and failure to keep right after a jury determined that
he was intoxicated when he drove his car into a ditch on
privately owned residential property, then left the car in the
ditch after he was unable to drive the car back onto the roadway.
He was sentenced to two concurrent prison terms of 1⅓ to 4 years

for the aggravated driving while intoxicated and driving while intoxicated charges and 15 days in jail for leaving the scene of the accident. County Court also imposed fines and surcharges. Defendant appeals and we affirm.

Initially, defendant contends that the verdict was against the weight of the evidence.[1] "Inasmuch as a different verdict would not have been unreasonable, we must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Westcott, 84 AD3d 1510, 1511 [2011] [internal quotation marks and citations omitted]). To support the verdict of aggravated driving while intoxicated, the People were required to prove that defendant was operating a motor vehicle with a blood alcohol content (hereinafter BAC) of .18% or more (see Vehicle and Traffic Law § 1192 [2-a]). As for the driving while intoxicated charge, the evidence must show that defendant was in an intoxicated condition when he operated the vehicle (see Vehicle and Traffic Law § 1192 [3]). The charge of leaving the scene of an accident involving property damage without reporting required the People to prove that defendant knowingly caused damage to real or personal property while operating a motor vehicle and left the accident scene without providing certain information to the damaged party (see Vehicle and Traffic Law § 600 [1] [a]). A verdict for failure to keep right must be supported with evidence that the defendant failed to keep to the right of a roadway that was of sufficient width (see Vehicle and Traffic Law § 1120 [a]). While

---

[1] Defendant's challenge to the legal sufficiency of the evidence was not preserved for our review (see People v Hawkins, 11 NY3d 484, 493 [2008]; People v Rankin, 117 AD3d 1231, 1232 [2014]) and we decline to exercise our interest of justice jurisdiction in connection with this unpreserved argument. Nevertheless, our weight of the evidence review necessarily includes consideration of whether all the elements of the crimes charged were proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Rankin, 117 AD3d at 1232).

defendant concedes that his BAC exceeded the statutory limit, his primary argument with regard to the aggravated driving while intoxicated, driving while intoxicated, and failure to keep right convictions is that he was not driving and that he did not become intoxicated until after the accident. In this regard, defendant testified that an individual named Chip, who he had not seen or spoken to since the accident, was driving the car when it went into the ditch.

According deference to the jury's credibility determinations, we do not believe that it was unreasonable for the jury to find that defendant was operating the vehicle in an intoxicated state. A defendant need not be driving to operate a vehicle for purposes of the Vehicle and Traffic Law; it is enough if the evidence shows that he or she is behind the wheel with the engine running (see People v Westcott, 84 AD3d at 1512). The testimony was that when defendant arrived on Marcy Lamica's doorstep to request assistance with getting the car out of the ditch, he was alone and smelled of alcohol. In addition to the testimony of Lamica and her sister-in-law describing his efforts, defendant acknowledged that he was behind the wheel of the car, and that the car was running with the wheels spinning as he attempted to drive the car out of the ditch. These factors are sufficient to establish that defendant was operating a motor vehicle on a public highway (see People v Beyer, 21 AD3d 592, 594 [2005], lv denied 6 NY3d 752 [2005]). Similarly, we discern no reason to disturb the jury's determination that defendant was intoxicated. The jury was entitled to credit the breathalyzer test evidence that defendant's BAC was in excess of .18% following his arrest, the witnesses' testimony with regard to defendant's slurred speech, unsteady movements, inability to stand in the ditch and that he smelled of alcohol. The jury was also entitled to reject defendant's claim that he had aggravated an old injury and consumed a quantity of bourbon between the time the car went into the ditch and when he was apprehended shortly thereafter, approximately a half of a mile away (see People v King, 77 AD3d 1173, 1174-1175 [2010]; People v Owens, 45 AD3d 1058, 1059 [2007]; People v Arnold, 2 AD3d 975, 975 [2004], lv denied 1 NY3d 594 [2004]). We also reject defendant's claim that the conviction for leaving the scene of an accident was against the weight of the evidence. Under the circumstances presented,

the jury was entitled to conclude that defendant did not give the required information to Lamica before leaving the accident scene (see Vehicle and Traffic Law § 600 [1] [a]).

Defendant also claims that County Court committed reversible error when it denied the People's challenge for cause to juror No. 38. As is relevant here, a challenge for cause may be made where a prospective juror "has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). During voir dire, juror No. 38 intimated that he knew someone who was a victim of a crime involving alcohol, that he was not happy with the outcome of the case and that he decided to go into law enforcement as a result of his experience. While we recognize such a response warranted further inquiry to secure the juror's express and unequivocal assurance of impartiality (see People v Young, 119 AD3d 970, 971 [2014]), the failure of counsel and the court to conduct this inquiry does not, under the circumstances presented, constitute reversible error. Reversible error occurs only if, at the time of the denial, the defendant had exhausted his or her peremptory challenges, or the defendant is forced to exercise a peremptory challenge against the prospective juror and then exhausts his or her peremptory challenges before the end of jury selection (see People v Lynch, 95 NY2d 243, 248 [2000]; People v Culhane, 33 NY2d 90, 97 [1973]; People v Russell, 288 AD2d 759, 760 [2001]). The anomaly here is that defendant did not join in the People's challenge for cause and, although his peremptory challenges were eventually exhausted, defendant did not use an available peremptory challenge for juror No. 38 when the juror was seated (see People v Russell, 288 AD2d at 760; People v Dehler, 216 AD2d 643, 643 [1995], lv denied 86 NY2d 734 [1995]). In our view, even if the court denied the challenge for cause in error, it was not reversible error.

We also reject defendant's claim that two sworn jurors should have been dismissed because they were "grossly unqualified to serve" (CPL 270.35 [1]). "A juror will be deemed to be grossly unqualified to serve only when, after conduct[ing] a probing, tactful inquiry into the specific circumstances, it becomes obvious that a particular juror possesses a state of mind

which would prevent the rendering of an impartial verdict" (People v Reichel, 110 AD3d 1356, 1358 [2013], lv denied 22 NY3d 1090 [2014] [internal quotation marks and citations omitted]). As such, "[t]his statutory test places a greater burden upon the moving party than if the juror was challenged for cause" (People v Buford, 69 NY2d 290, 298 [1987] [internal quotation marks and citation omitted]; see People v Wlasiuk, 90 AD3d 1405, 1409 [2011]). Accordingly, while a court should generally err on the side of disqualification when a juror is challenged for cause, a juror should be removed during a trial as grossly unqualified "only when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict" (People v Buford, 69 NY2d at 298).

Here, during the course of testimony by a witness to the incident, juror No. 87 advised that he was related to the witness. Although it is not clear when the disclosure was made, County Court later confirmed that the witness also disclosed that she was related to a different juror, juror No. 169. There is no dispute that the jurors and the witness were related within the degree of consanguinty that would permit a challenge for cause (see CPL 270.20 [1] [c]), and all agree that their failure to disclose was inadvertent. The court allowed the witness to complete her testimony before conducting an in camera review with counsel and the two jurors to review the "nature of their relationship" to the witness.

Where a juror is "related within the sixth degree by consanguinity or affinity to . . . a prospective witness at trial" (CPL 270.20 [1] [c]), and a timely objection is made, the juror is automatically barred from sitting on the jury even if he or she claims they can be impartial (see People v Walters, 12 AD3d 953, 954 [2004]). Here, because the jurors were sworn and the witness had already testified, defendant's right to remove the jurors for cause was waived and the only available ground for removal was the "grossly unqualified" standard (see CPL 270.35; compare CPL 270.15 [4]; 270.20; People v Harris, 57 NY2d 335, 349 [1982]). Since defendant did not argue that the jurors were grossly unqualified, the issue is not preserved for our review. Even if it were preserved, we would deem it to be without merit. A juror is not grossly unqualified because there is a

relationship within the sixth degree of consanguinity or affinity. Indeed, "[u]nless the juror is aware of the relationship, the statutory proscription does not come into play" (People v Barnes, 129 AD2d 249, 250 [1987], lv denied 70 NY2d 873 [1987]). Here, the jurors only realized their relation to the witness during her testimony. The record confirms that neither juror became aware of the relationship during jury selection because they were so distantly related. The scope of a court's evaluation is dependent on the nature of the disqualifying conduct and, under the circumstances presented, we would not find that any further inquiry with regard to whether the jurors were grossly unqualified was necessary (see People v Mejias, 21 NY3d 73, 79 [2013]).

Defendant also contends that he was deprived of a fair trial due to prosecutorial misconduct, to wit, that the prosecutor mischaracterized Lamica's testimony during his opening argument and questioned defendant's failure to tell the police about Chip. Inasmuch as defendant did not object to either instance at trial, we find that his claim is not preserved for our review (see People v Jordan, 99 AD3d 1109, 1110 [2012], lv denied 20 NY3d 1012 [2013]). Nor do we believe that the conduct was inappropriate. During his opening statement, the prosecutor was entitled to "'state . . . the facts he expect[ed] to prove [and] the evidence he plan[ned] to introduce'" (People v Brown, 104 AD2d 696, 696 [1984], lv denied 64 NY2d 778 [1985], quoting People v Kurtz, 51 NY2d 380, 384 [1980], cert denied 451 US 911 [1981]). The minor inconsistency between the expected testimony and the actual testimony did not constitute misconduct. Similarly, the prosecutor's questions with regard to Chip, the ostensible driver, during defendant's cross-examination were not improper (see People v Andrews, 237 AD2d 110, 110 [1997], lv denied 90 NY2d 1009 [1997]).

We also find no merit to defendant's ineffective assistance of counsel claim. When evaluating such a claim, this Court looks to whether "the law, and the circumstances of a particular case, viewed in totality and as of the time of representation, reveal that the attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]). "[T]o establish ineffective assistance, a defendant must 'demonstrate the absence of

strategic or other legitimate explanations' for counsel's allegedly deficient conduct" (People v Caban, 5 NY3d 143, 151 [2005], quoting People v Rivera, 71 NY2d 705, 709 [1988]). Our role is to evaluate an attorney's "performance . . . to determine whether the tactics and strategies were consistent with those of a reasonably competent attorney. The test is reasonable competence, not perfect representation" (People v Oathout, 21 NY3d 127, 128 [2013] [internal quotation marks and citations omitted]). Here, defendant claims that he received ineffective representation because his trial counsel failed to pursue a Huntley hearing. We disagree. A "showing that counsel failed to make a particular pretrial motion generally does not, by itself, establish ineffective assistance of counsel" (People v Rivera, 71 NY2d at 709; see People v Hamms, 55 AD3d 1142, 1145, lv denied 11 NY3d 925 [2009]). Defendant's statements during custodial interrogation that he was not driving the car were consistent with the defense presented during the trial. In our view, the record confirms that there was a legitimate basis for trial counsel's decision to forgo a Huntley hearing.

We further reject defendant's claim that he was denied the effective assistance of counsel because he failed to object to juror No. 38 for cause. The record confirms that trial counsel was equivocal on his decision, but "lawyers selecting juries are not ineffective because they make unconventional choices or play hunches" (People v Thompson, 21 NY3d 555, 560 [2013]). Trial counsel's belief that the juror's experience "could be a good thing" for defendant, could have been based on his demeanor or body language, factors we cannot discern from the record (see id.; People v Barboni, 21 NY3d 393, 406-407 [2013]). Thus, we cannot conclude there was no legitimate explanation for the perceived error (see People v Barboni, 21 NY3d at 406-407). Moreover, even if we believed that it was an error, under the circumstances, we do not believe that it was so "clear-cut and completely dispositive" as to constitute reversible error (People v Thompson, 21 NY3d at 561 [internal quotation marks and citation omitted]).

Defendant's remaining arguments in support of his ineffective assistance of counsel claim — that trial counsel should have objected during defendant's cross-examination about

Chip and failed to preserve the legal insufficiency argument —
are also without merit.  As stated, we do not believe that the
prosecutor's questions were objectionable (see People v Marshall,
2 AD3d 1157, 1158 [2003], lv denied 2 NY3d 743 [2004]).  The
failure to preserve a legal sufficiency argument does not
necessarily establish ineffective assistance (see People v
Harvey, 96 AD3d 1098, 1100 [2012], lv denied 20 NY3d 933 [2012];
People v Elwood, 80 AD3d at 988, 990 [2011], lv denied 16 NY3d
858 [2011]).  Based on our review, we find that, even accepting
that errors may have occurred, defendant received meaningful
representation (see People v Baldi, 54 NY2d at 147, 152).

Finally, given the nature of the crimes, the risk that
defendant created in the community and his criminal history, we
discern no abuse of discretion or extraordinary circumstances
warranting a reduction of the sentence in the interest of justice
(see People v Young, 115 AD3d 1013, 1015 [2014]).

Peters, P.J., Lahtinen, Garry and Rose, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court