*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 23, 2016                    106653
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,
        v                                   MEMORANDUM AND ORDER

WILLIE F. MORRIS,
                        Appellant.
_____


Calendar Date:  April 19, 2016

Before:  Peters, P.J., Garry, Rose, Clark and Aarons, JJ.

                        _____


        Mark Diamond, Albany, for appellant, and appellant pro se.

        P. David Soares, District Attorney, Albany (Vincent Stark
of counsel), for respondent.

                        _____


Garry, J.

        Appeal from a judgment of the County Court of Albany County
(Herrick, J.), rendered February 26, 2014, upon a verdict
convicting defendant of the crime of criminal possession of a
weapon in the second degree.

        Following an incident in which he was alleged to have
possessed a stolen handgun, defendant was charged with criminal
possession of a weapon in the second degree and criminal
possession of stolen property in the fourth degree.  An initial
trial resulted in defendant's acquittal as to the criminal
possession of stolen property in the fourth degree charge, and a
mistrial was declared as to the remaining count.  At the
conclusion of the second trial, a jury found defendant guilty of
the sole remaining count of criminal possession of a weapon in

the second degree.  Defendant was then sentenced, as a second felony offender, to 13 years in prison with five years of postrelease supervision.  Defendant appeals.

Initially, defendant's nonspecific motion for a trial order of dismissal was insufficient to preserve his argument that the conviction was not supported by legally sufficient evidence (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Parker, 127 AD3d 1425, 1426 [2015]; People v Carter, 40 AD3d 1310, 1311 [2007], lvs denied 9 NY3d 873, 879 [2007]).  Nor did his subsequent motion to set aside the verdict pursuant to CPL 330.30 preserve the issue for our review; such relief is limited to issues that have been preserved and require reversal as a matter of law (see People v Howard, 134 AD3d 1153, 1158 [2015], lv denied 27 NY3d 965 [2016]; People v Simmons, 111 AD3d 975, 977 [2013], lv denied 22 NY3d 1203 [2014]).  Nevertheless, defendant's claim that the verdict was against the weight of the evidence requires us to consider whether the proof at trial was adequate to establish each element of the charged offense (see People v Butler, 126 AD3d 1122, 1122 n [2015], lv denied 25 NY3d 1199 [2015]).  Where, as here, a different outcome would not have been unreasonable, we "view the evidence in a neutral light and weigh the probative force of the conflicting testimony and any rational inferences that may be drawn from the evidence" (People v Gordon, 119 AD3d 1284, 1285 [2014], lv denied 24 NY3d 1002 [2014]; see People v Danielson, 9 NY3d 342, 348 [2007]; People v Nelligan, 135 AD3d 1075, 1076 [2016]).

During defendant's trial, the People called, among other witnesses, the two police officers who initially encountered defendant, Michael Fargione and Milton Johnson.  Fargione testified that he and Johnson were on patrol in an unmarked police vehicle at approximately 12:25 a.m. when they observed a crowd of people drinking and smoking in front of the Port Tavern on South Pearl Street in the City of Albany.  Fargione parked the vehicle in the oncoming lane in front of the tavern with the intention of issuing citations for loitering and obstructing the sidewalk.  Upon exiting the vehicle, Fargione detected the strong odor of marihuana.  As the officers approached the crowd, he observed defendant grab at his waistband and take off running while pushing other people out of the way.  Fargione pursued

defendant on foot and ordered him to stop.  Johnson followed.
One other individual in the crowd also fled, but took a different
route and was not pursued by the officers.  Defendant slipped and
fell twice as the officers were giving chase.  Fargione observed
that defendant was wearing one glove and, during defendant's
second fall, also observed a black object in his left hand.
After his second fall, defendant regained his footing and turned
a corner onto Broad Street.  As defendant approached a vacant,
snow-covered lot on Broad Street, Fargione — who was steps behind
defendant — saw defendant throw the black object into the vacant
lot.  Defendant continued to run a short distance before finally
lying down in a snow bank, where Fargione placed him under
arrest.  Notably, Fargione testified that there was no one else
running in front of defendant during the pursuit.

Johnson provided a similar account of the pursuit.  He
testified that, upon first approaching the crowd in front of the
tavern, he observed defendant reach down and grab a black object
from the right side of his waistband area before defendant then
fled the scene, pushing people out of his path in the process.
Johnson further testified that he was following Fargione at a
distance of approximately 10 to 20 feet.  He observed defendant
fall twice before regaining his footing.  Defendant eventually
rounded a corner onto Broad Street, followed by Fargione, and
both were briefly out of sight.  Upon reaching Broad Street,
Johnson observed that Fargione had placed defendant under arrest.
Johnson testified consistently with Fargione that he did not
observe anyone else running in front of defendant.  Once
defendant had been placed under arrest, other officers arrived at
the scene.

One of these officers, Matthew Serpe, testified that he and
Fargione conducted a visual search of the vacant lot and that he
observed a "divot" in the snow, which he then pointed out to
Fargione.  According to Fargione, the indentation was located
about 30 to 40 feet from where he had observed defendant throw
the black object.  Upon closer inspection of the divot, the
officers discovered a black sock.  Both officers testified that
the sock did not show any effects from the weather; Serpe noted
that it was "basically clean other than the snow on the bottom of
it."  Serpe then discovered that the sock contained a loaded

handgun which, he noted, was "body temperature." The People also called several witnesses to testify regarding efforts to recover DNA evidence from the sock and handgun, as well as fingerprints from the handgun and shell casings. In sum, this testimony revealed that, although samples were obtained and tested from the sock and handgun, the DNA results were too complex to permit a conclusive identification. No fingerprints were recovered from the handgun or shell casings.

The defense offered a differing account of the events, which, in essence, suggested that another individual who had fled from the tavern might have discarded the handgun. Defendant's sister, Heavenly Morris, and his friend, Michael Wilson, each testified that they observed numerous individuals running away from the tavern prior to defendant's arrest. Wilson testified that, while running away from the tavern down Broad Street, he saw "a few people" running ahead of him. He also observed a black male wearing a red or burgundy jacket make a throwing motion, although he conceded that he did not see if anything was actually thrown. On cross-examination, he clarified that he knew that the black male in the red jacket was not defendant because he had seen defendant at the tavern earlier and "believe[d] he had on black or something like that." He also acknowledged that, although he was aware of the charges against defendant, he had not come forward with the information until the day before his testimony. Defendant denied being aware that the individuals pursuing him were police officers and asserted that there were "[a] dozen" other individuals fleeing from the tavern ahead of him. He also denied having possessed a handgun or a glove that evening, and reiterated the testimony of Morris that he had been patted down for weapons earlier in the evening before entering another bar. On cross-examination, however, he conceded that the police property report listed a glove that was recovered from his person. He also acknowledged that, while awaiting trial, he had been incarcerated on the same cell block as Wilson, but asserted that he had merely asked Wilson to testify as to his observations and did not discuss any of the factual details of the case.

Upon our independent review, we find the verdict supported by the weight of the evidence. The People presented ample evidence to establish that "defendant possessed a loaded firearm

in a place other than his home or business" (People v Hawkins, 110 AD3d 1242, 1242 [2013], lv denied 22 NY3d 1041 [2013]; see Penal Law § 265.03 [3]). Although the testimony of the defense witnesses, if believed, provided an alternate account of the circumstances surrounding the discovery of the weapon, "[i]n reviewing the evidence, we accord great deference to the jury's credibility determinations given its opportunity to hear the testimony and observe the witnesses' demeanor" (People v Lopez-Aguilar, 64 AD3d 1037, 1037 [2009], lv denied 13 NY3d 940 [2010]; see People v Romero, 7 NY3d 633, 644 [2006]; People v Rojas, 121 AD3d 1427, 1429 [2014], lv denied 24 NY3d 1221 [2015]). Notably, the credibility of the defense witnesses was called into question by the People's ability to establish inconsistencies in their testimony and facts that would support a reasonable inference of bias. Thus, viewing the evidence in a neutral light, we find that the jury's verdict was not against the weight of the evidence (see People v Oliver, 135 AD3d 1188, 1191 [2016], lv denied 27 NY3d 1003 [2016]; People v Butler, 126 AD3d at 1123; People v McFarland, 106 AD3d 1129, 1130-1131 [2013], lv denied 22 NY3d 1140 [2014]).

Defendant also argues that County Court erred in refusing to require further inquiry after defense counsel's Batson objection to the People's allegedly discriminatory use of a peremptory challenge based on race (see generally Batson v Kentucky, 476 US 79 [1986]). We disagree. Under the well-established Batson framework, an objecting party bears the burden of establishing on a prima facie basis that the challenge was exercised on the basis of the juror's race; only if this initial burden is satisfied does the burden then shift to the nonmoving party to provide a race-neutral explanation for the removal of the prospective juror (see id. at 96-98; People v Smocum, 99 NY2d 418, 420 [2003]; People v Grafton, 132 AD3d 1065, 1066 [2015], lvs denied 26 NY3d 1145, 1147 [2016]). In order to satisfy his or her initial burden, the objecting party must "set forth facts and other relevant circumstances to support an inference of discrimination" (People v Hecker, 15 NY3d 625, 651 [2010] [internal quotation marks and citation omitted], cert denied 563 US 947 [2011]). Here, defense counsel objected to the People's use of a peremptory challenge on the basis that the challenged prospective juror was the only black person on the panel. County

Court determined that the People were not required to provide an explanation on this basis alone. Defendant's counsel did not seek to argue that similarly situated non-black jurors were seated or to otherwise "identify, allege or develop facts or other relevant circumstances sufficient to raise an inference that the prosecutor used the challenge for discriminatory purposes" (People v King, 277 AD2d 708, 708 [2000], lv denied 96 NY2d 802 [2001]; see People v Guardino, 62 AD3d 544, 545-546 [2009], affd 15 NY3d 625 [2010], cert denied 563 US 947 [2011]; People v McCloud, 50 AD3d 379, 381 [2008], lv denied 11 NY3d 738 [2008]; compare People v Bolling, 79 NY2d 317, 324-325 [1992]). Accordingly, we find no error in the court's determination that defendant failed to meet his prima facie burden and, thus, that the People were not required to provide a race-neutral explanation for their use of the peremptory challenge.

We reject defendant's assertion that he was denied a fair trial due to prosecutorial misconduct, including allegedly improper comments made by the prosecutor throughout the trial. As an initial matter, his challenges to the propriety of the prosecutor's closing remarks and certain other remarks are unpreserved, as he failed to object (see People v Rivera, 124 AD3d 1070, 1074-1075 [2015], lvs denied 26 NY3d 971 [2015]; People v Clarke, 110 AD3d 1341, 1345 [2013], lv denied 22 NY3d 1197 [2014]). With respect to the remaining instances of alleged misconduct, defendant contends that the prosecutor's reference during his opening statement to the fact that the handgun was stolen — and the evidence elicited to that effect — was prejudicial and unnecessary to prove that defendant's possession of the handgun was criminal because the parties had already stipulated that defendant did not possess a license to possess a firearm. Although the evidence that the handgun was stolen merely reinforced the evidentiary purpose of the stipulation, "the People were, despite the stipulation, still required to prove their case beyond a reasonable doubt and present 'relevant material evidence as to [each] element of a charged crime'" (People v White, 79 AD3d 1460, 1463 [2010], lvs denied 17 NY3d 791, 803 [2011], quoting People v Hills, 140 AD2d 71, 80 [1988], lv denied 73 NY2d 855 [1988]). In its totality, the challenged conduct did not evidence a "flagrant and pervasive pattern of prosecutorial misconduct" that deprived defendant of a fair trial

(People v Chancey, 127 AD3d 1409, 1412 [2015] [internal quotation
marks and citations omitted], lv denied 25 NY3d 1199 [2015]), and
County Court diligently provided appropriate limiting
instructions, minimizing any possible prejudice to defendant (see
People v Arce, 42 NY2d 179, 187 [1977]; People v Delaney, 42 AD3d
820, 822 [2007], lv denied 9 NY3d 922 [2007]; People v McCombs,
18 AD3d 888, 890 [2005]).

Next, defendant was properly sentenced as a second violent
felony offender.  Penal Law § 70.02 enumerates those crimes that
constitute violent felony offenses for purposes of determining
whether a defendant is a second violent felony offender pursuant
to Penal Law § 70.04.  Prior to sentencing, defendant admitted to
having been convicted of, among other things, criminal possession
of a weapon in the third degree in 1999 under Penal Law § 265.02
(former [4]).  At the time of his conviction, criminal possession
of a weapon in the third degree was enumerated as a violent
felony offense under Penal Law § 70.02 (see Penal Law § 70.02 [1]
[former (c)]).  That crime was subsequently recodified as
criminal possession of a weapon in the second degree under Penal
Law § 265.03 (see L 2006, ch 742, as amended; People v Jones, 22
NY3d 53, 58 [2013]), and this section is now referenced in Penal
Law § 70.02.  Thus, given that criminal possession of a weapon in
the third degree constituted a violent felony under Penal Law
§ 70.02 at the time of defendant's conviction and, in fact, the
conduct that constituted that crime is still classified as a
violent felony, we find that County Court properly accepted the
conviction for purposes of sentencing defendant as a second
violent felony offender (see People v Thomas, 122 AD3d 489, 489
[2014], lv denied 24 NY3d 1123 [2015]; People v Bowens, 120 AD3d
1148, 1149 [2014], lv denied 25 NY3d 949 [2015]; see also People
v Walker, 81 NY2d 661, 665 [1993]).

Defendant's remaining contentions do not require extended
discussion.  County Court did not err in admitting a recording of
a telephone call made by defendant from the correctional facility
where he was incarcerated prior to trial; the People laid a
proper foundation for the admission of the recording by providing
evidence of the recording's authenticity and the identity of the
speaker (see People v Lancaster, 121 AD3d 1301, 1304 [2014], lv
denied 24 NY3d 1121 [2015]; People v Vanhoesen, 31 AD3d 805, 807

[2006]). Finally, defendant was not denied the effective assistance of counsel. The record belies defendant's claim that his counsel was unaware of his previous trial. Defense counsel provided "meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]) by, among other things, making appropriate pretrial and trial motions, rendering timely and appropriate objections and presenting a cogent opening statement and summation (see People v Ramos, 133 AD3d 904, 909 [2015], lvs denied 26 NY3d 1143, 1149 [2016]; People v Hammond, 107 AD3d 1156, 1156 [2013]).

Peters, P.J., Rose, Clark and Aarons, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court