[46 NYS3d 615]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CAROLINA VILLANUEVA, Appellant.

First Department, February 16, 2017

## APPEARANCES OF COUNSEL

*Robert S. Dean*, Center for Appellate Litigation, New York City (*Carl S. Kaplan* counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Patrick J. Hynes* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.P.

The main issue on appeal centers on the definition of threat of immediate use of force in the context of a robbery conviction (*see* Penal Law § 160.00). Defendant argues that the element of force was not established beyond a reasonable doubt with respect to her robbery in the second degree conviction (Penal Law § 160.10 [1]), because neither defendant nor her codefendant ever touched the complainant and the threat of use of force was in fact not a threat of immediate harm. Rather, defendant contends, it was a threat of possible future harm, delivered by verbal threat indicating that calls were going to be made to others, and that the others, once notified, would come to the

scene at some time in the future possibly to harm the complainant. We disagree, because the threat in this case was part of a chain of actions by defendant and her codefendant, by which they conveyed the impression that disobeying their demands would result in imminent physical harm. Defendant's other arguments are also meritless.

On December 6, 2012, at around 9:00 p.m., Carlos Diaz made a food delivery at an apartment building at 367 Madison Street in Manhattan. The entrance to the building was set back from the sidewalk by about one half of a city block.

When Diaz arrived, he locked his bicycle outside the building and saw defendant and her codefendant, Ruby Verdi,[1] standing in front of an adjacent apartment building. As Diaz got to the front of 367 Madison Street, Verdi approached him and asked him if he wanted to have sex with her, and he responded no. Verdi followed Diaz as he entered the building and walked into the elevator.

Inside the elevator, Verdi grabbed Diaz's private parts and propositioned him for sex in exchange for $20. Diaz again refused the offer. Once Diaz had delivered the food and gotten back into the elevator to go downstairs, Verdi again followed him and grabbed him and told him to have sex with her. When Diaz again refused, Verdi told him that if he did not give her $20 dollars she was going to scream and that she would call the police and tell them that Diaz had tried to attack her.

When the elevator reached the ground floor, Diaz exited the building and walked toward his bicycle, with Verdi following behind. Defendant was standing near Diaz's bicycle, leaning against it, preventing him from unchaining it. Verdi told defendant that she had had sex with Diaz inside the elevator but Diaz did not want to pay her. Defendant told Diaz to pay Verdi, but Diaz refused to do so, denying that he had had sex with Verdi. Defendant demanded $20 from Diaz, telling him that if he did not pay, "she was going to call her boyfriend, he was a tall black guy, and he would beat [Diaz] up." She also threatened to call the police.

Diaz saw a black male exiting the adjacent apartment building, holding a cell phone. Defendant walked over to the man, and the two began to speak. Diaz could not hear the conversation, but he observed the man make a gesture with his cell

---

1. The codefendant pleaded guilty to attempted robbery in the second degree.

phone as if he were about to call someone. At the same time, Verdi "grabbed" Diaz's bicycle, and prevented him from unchaining it.

Defendant returned to where Diaz was standing and told him "her boyfriend was coming over and they were going to bring more people to beat [him] up." Diaz became "scared," and gave Verdi $20. Defendant then demanded that Diaz give her $20 as well, and Diaz complied. The women then let Diaz go.

Diaz returned to the restaurant about two minutes later and reported the incident to his boss, who called the police. Approximately 30 minutes later, defendant and Verdi were arrested. As defendant was entering the patrol car, she dropped two $20 bills on the ground.

Defendant argues on appeal that the evidence was legally insufficient to establish her guilt of robbery in the second degree and grand larceny in the fourth degree, and that, in the alternative, the jury's verdict was against the weight of the evidence. With respect to her robbery conviction, defendant argues that the People failed to demonstrate that she threatened Diaz with the immediate use of physical force, since she told Diaz that the man that was standing outside the adjacent building was going to call his friends to beat up Diaz, and that, "[s]ince the verbal threat, by its words, indicated that calls were going to be made to others, and that others, once notified, would come to the scene at some time in the future to possibly harm Diaz, it was not a threat of immediate harm."

With respect to her conviction of grand larceny in the fourth degree, defendant argues that "the evidence showed that Diaz fearfully but voluntarily 'gave' the cash to [defendant] from his hands," and thus defendant did not take property from Diaz's person. Accordingly, defendant contends that her conviction should be reduced to the lesser included offense of petit larceny.

A verdict is based upon legally sufficient evidence if "any rational trier of fact could have found the essential elements of the crime [proved] beyond a reasonable doubt" (*People v Cintron*, 95 NY2d 329, 332 [2000] [internal quotation marks omitted]). The court must view the evidence in the light most favorable to the People (*People v Kancharla*, 23 NY3d 294, 302 [2014]; *People v Danielson*, 9 NY3d 342, 349 [2007]).

In reviewing the weight of the evidence, an intermediate appellate court should

> "affirmatively review the record; independently assess all of the proof; substitute its own credibility

determinations for those made by the jury in an appropriate case; determine whether the verdict was factually correct; and acquit a defendant if the court is not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt" (*People v Delamota*, 18 NY3d 107, 116-117 [2011]; *see also Danielson*, 9 NY3d at 348).

Great deference, however, is accorded to the jury's credibility determinations, since the jury had an "opportunity to view the witnesses, hear the[ir] testimony and observe [their] demeanor" (*People v Bleakley*, 69 NY2d 490, 495 [1987]).

■ Applying these standards here, we find that the evidence was legally sufficient to prove defendant's guilt of robbery in the second degree and grand larceny in the fourth degree and that the verdict was not against the weight of the evidence. With respect to defendant's robbery conviction, the evidence demonstrates that defendant threatened Diaz with the immediate use of physical force. Pursuant to Penal Law § 160.00 (1), a person is guilty of robbery "when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking." However, "[t]he statute does not require the use of any words whatsoever, but merely that there be a threat, whatever its nature, of the immediate use of physical force" (*People v Woods*, 41 NY2d 279, 283 [1977]). There is also no requirement that a weapon be displayed or that the victim be physically injured to demonstrate that there was a threat of immediate physical force (*see People v Bennett*, 219 AD2d 570 [1st Dept 1995], *lv denied* 87 NY2d 844 [1995]). Further, the threat of the immediate use of force may be demonstrated by "a chain of actions on the part of [the] defendant" (*People v Thomas*, 273 AD2d 161, 162 [1st Dept 2000], *lv denied* 95 NY2d 908 [2000]), that "convey[s] the impression that disobeying [her commands] could result in imminent physical repercussions" (*People v Smith*, 22 NY3d 1092, 1094 [2014]).

Diaz testified that he gave defendant the $20 because he was "scared" after defendant and Verdi prevented him from leaving and defendant explicitly threatened him that if he did not comply, her boyfriend would beat him up. Defendant then went to speak to a man who gestured that he was going to call

someone (*see People v Read*, 228 AD2d 304, 305 [1st Dept 1996], *lv denied* 88 NY2d 1071 [1996] ["defendant and his accomplices at the least threatened the use of force by the manner in which they surrounded defendant and prevented his movement"]).

Based on the totality of the circumstances, the jury reasonably concluded that defendant threatened Diaz with the immediate use of physical force (*People v Wood*, 41 NY2d at 282 ["we do not have to evaluate . . . words in a vacuum, but rather, it was proper for the trial court to allow the jury to interpret these words in light of the myriad facts and circumstances of this case, and it is within the province of the jury to determine the weight to be accorded the testimony"]).

Defendant also argues that the evidence supporting her conviction of grand larceny in the fourth degree was legally insufficient and that the verdict was against the weight of the evidence, since she did not take property from Diaz's person, but, rather, Diaz voluntarily gave her the cash.

Initially, defendant's legal sufficiency challenge is unpreserved, since she did not move for a trial order of dismissal on the grand larceny count on the ground that the People failed to prove beyond a reasonable doubt that she took property from Diaz's person.[2] In any event, defendant's argument is unavailing.

A person is guilty of grand larceny in the fourth degree when she steals property, and the property "is taken from the person of another" (Penal Law § 155.30 [5]). Further, a larceny "from the person" (Penal Law § 155.30 [5]) occurs when the victim is forced to hand over property against his will (*People v Nelson*, 36 AD3d 532, 533 [1st Dept 2007]).

Here, the record demonstrates that defendant wrongfully obtained Diaz's money when she forced him to turn it over against his will by threatening to have him beaten up. When Diaz handed defendant the money, she "exercised dominion and control over the property" in a manner "wholly inconsistent" with his ownership rights (*see People v Washington*, 191 AD2d 278, 278 [1st Dept 1993]).

Further, contrary to defendant's contention, the money was taken from Diaz's person. Although defendant did not physically take the money from Diaz, she repeatedly threatened him. Thereafter, Diaz removed the cash from his person and

---

2. Defendant's claim of ineffective assistance of counsel on the ground that trial counsel failed to make this motion is discussed below.

handed it to defendant and Verdi, thus satisfying the elements of grand larceny in the fourth degree (*compare People v Alexander*, 208 AD2d 757, 757-758 [2d Dept 1994], *lv denied* 84 NY2d 1008 [1994] ["Property obtained by the threat of the immediate use of force constitutes a 'taking' whether the victim hands the perpetrator the property or the perpetrator removes it himself from the victim"], *with People v Robert YY*, 58 AD2d 920 [3d Dept 1977] [the complainant testified that the defendant pointed a shotgun at him and "relieved" him of $5, while the defendant testified that the complainant gave him the $5 as a loan, and that the shotgun "played no part in the incident"; larceny conviction "inconsistent" with acquittal of robbery charge, since the jury rejected the complainant's account of the use of the shotgun], *and People v Washington*, 155 AD2d 634 [2d Dept 1989] [no "taking" where the complainant voluntarily gave the defendant $20 with the expectation of receiving cocaine in return]).

Defendant's argument that she received ineffective assistance of counsel because her trial counsel did not move to dismiss the grand larceny count on the ground that the People failed to prove beyond a reasonable doubt that she took property from Diaz's person is unavailing. Even if counsel had raised this argument below, the record demonstrates that it would not have changed the outcome of the trial or the outcome of this appeal.

Accordingly, the judgment of the Supreme Court, New York County (Ruth Pickholz, J.), rendered January 6, 2014, convicting defendant, after a jury trial, of robbery in the second degree and grand larceny in the fourth degree, and sentencing her, as a second felony offender, to an aggregate term of five years, should be affirmed.

RENWICK, ANDRIAS, SAXE and GISCHE, JJ., concur.

Judgment, Supreme Court, New York County, rendered January 6, 2014, affirmed.