■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RYAN PLACE, Appellant. [59 NYS3d 187]—

Aarons, J. Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered August 11, 2014, upon a verdict convicting defendant of the crimes of kidnapping in the second degree, assault in the second degree, assault in the third degree, grand larceny in the fourth degree, petit larceny (two counts), attempted assault in the third degree, harassment in the second degree and aggravated harassment in the second degree.

Defendant was charged in a multicount indictment with vari-

ous crimes stemming from an incident where he lured the victim, his ex-girlfriend, into a wooded area and then tied her up, dragged her through the woods and choked, beat and threatened to kill her. Following a jury trial, defendant was convicted of kidnapping in the second degree, assault in the second degree, assault in the third degree, grand larceny in the fourth degree, petit larceny (two counts), attempted assault in the third degree, harassment in the second degree and aggravated harassment in the second degree. County Court thereafter sentenced defendant, as a second felony offender, to concurrent prison terms, the greatest of which was 20 years, followed by five years of postrelease supervision. Defendant appeals. We affirm.

Defendant challenges the legal sufficiency of the evidence as it pertains to the convictions for kidnapping in the second degree, assault in the second degree, grand larceny in the fourth degree and petit larceny (both counts). Defendant, however, failed to preserve such contention for our review given that he made only a general motion to dismiss at the close of the People's proof and failed to renew such motion at the close of his proof (see People v Valverde, 122 AD3d 1074, 1075 [2014], lv denied 27 NY3d 970 [2016]; People v Simmons, 103 AD3d 1027, 1029 [2013], lv denied 21 NY3d 1009 [2013]). Nevertheless, because defendant also contends that the verdict was against the weight of the evidence with respect to these crimes, we review the evidence adduced as to each element of the crimes for which defendant was convicted (see People v Mould, 143 AD3d 1186, 1186 [2016], lv denied 28 NY3d 1187 [2017]; People v Morris, 140 AD3d 1472, 1473 [2016], lv denied 28 NY3d 1074 [2016]). Inasmuch as the People concede in their brief that an acquittal would have been reasonable, we "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Murrell, 148 AD3d 1296, 1297 [2017] [internal quotation marks and citations omitted]; People v Collier, 146 AD3d 1146, 1148 [2017]).

At trial, the People established, largely through the victim's testimony, that defendant and the victim went to a wooded area so they could talk. Defendant drove there on his motorcycle while the victim followed him in her own vehicle. The victim testified that, after she confessed to cheating on defendant while they were in a relationship, defendant "flipped." Defendant then grabbed her by the throat, choked her and "body slammed" her. Defendant took her cell phone and car keys, tied her hands and legs, grabbed her by the hair and dragged her

approximately 500 feet through the woods. Defendant stopped by a swamp-like area and forced the victim to start digging a hole in the ground to serve as her grave. The victim testified that defendant became angry because she was not digging fast enough and he "started punching [her] and kicking [her] in between [her] ribs." After defendant threw the victim in the water, defendant had the victim stand by a tree and, as he asked her questions about their relationship, he punched her in the ribs, stomach and face.

The victim stated that defendant gave her the option of not dying if she broke up with her boyfriend. Defendant gave the victim her cell phone and the victim ended her relationship with her boyfriend based upon a narrative provided by defendant. The victim testified that, afterwards, defendant's mood "changed from being irate and angry" and he "became more rational." Defendant helped the victim out of the woods, but also threatened to kill her niece if she called the police. Defendant returned the car keys to the victim and told her to follow him. The victim stated that she thought of going to the Sheriff's office but she was "too afraid to make any rash decisions." Defendant had the victim park her car in a condominium complex down the road from his residence* and then they drove back to his place on his motorcycle. The victim stated that, once in defendant's living room, defendant started crying and was "losing it." Defendant obtained a knife and threatened to kill himself. The victim did not leave because she thought "it was another game, a test." The victim consoled defendant and he became "nurturing again." The victim testified that defendant "initiated sex, and [she] did have sex with him." The victim explained that she did so, in part, to "maintain[ ] control of the situation."

According to the victim, defendant left for work the next morning, but he told her to "stay put at his house" and "not to do anything stupid." Defendant also took the victim's cell phone and car keys with him. The victim stated that she was still in shock and "didn't know what to do." She did not call the police so that defendant would not have a reason to harm her. She was also afraid that defendant would kill her niece if she did so. Later in the afternoon, defendant's mother discovered the victim in defendant's bedroom. The victim testified that she explained to defendant's mother what had happened. Defendant eventually returned with his father and the victim described defendant as "[a]ngry, panicky." Defendant's parents did not leave the victim's side and the victim stated that de-

* Defendant lived with his parents.

fendant "was getting very angry" and threatened to kill the three of them. The parents backed off and, as defendant exited the house, a deputy sheriff had arrived. Defendant, who still had the victim's cell phone and car keys, ran away. As the victim and her parents, who came to defendant's residence, were going to the Sheriff's office, defendant, who was in the victim's vehicle, came from around the corner and almost hit them. Defendant was thereafter taken into custody.

The People also adduced testimony from the victim's boyfriend, who testified that he received text messages from the victim breaking up with him. A deputy sheriff testified that the victim led him to the wooded area where he observed a hole in the ground and "she indicated that that was familiar to her." The deputy also testified that the victim "seemed visibly shaken or frightened" while in the woods with him. Another law enforcement official testified that he observed multiple bruises on the victim, and a physician's assistant stated that the victim had a non-displaced rib fracture and bruises and abrasions throughout her body.

Based on the foregoing and viewing the evidence in a neutral light, we are unpersuaded by defendant's argument that his convictions for kidnapping in the second degree and assault in the second degree were against the weight of the evidence (see People v McCann, 126 AD3d 1031, 1033 [2015], lv denied 25 NY3d 1167 [2015]; People v Dolan, 51 AD3d 1337, 1338-1339 [2008], lv denied 12 NY3d 757 [2009]; People v Smith, 41 AD3d 1093, 1094 [2007], lv denied 9 NY3d 1039 [2008]). Nor do we find any merit in defendant's assertion that the larceny convictions were against the weight of the evidence inasmuch as the People established that defendant intended to deprive the victim of her vehicle, car keys and cell phone (see People v Villanueva, 148 AD3d 210, 215-216 [2017]; People v Perez, 93 AD3d 1032, 1035-1036 [2012], lv denied 19 NY3d 1000 [2012]; People v Brightly, 148 AD2d 623, 624 [1989], lv denied 74 NY2d 737 [1989]; see generally People v Yusufi, 247 AD2d 648, 649 [1998], lv denied 92 NY2d 863 [1998]). To the extent that defendant claims that the victim's testimony was unworthy of belief, vague or inconsistent, we accord deference to the jury's resolution of credibility issues (see People v Hadfield, 119 AD3d 1217, 1220 [2014], lv denied 25 NY3d 989 [2015]).

Defendant's contention that the conviction for kidnapping in the second degree should have merged with his conviction for assault in the second degree is unpreserved inasmuch as such contention was raised for the first time in a CPL 330.30 motion (see People v Hughes, 114 AD3d 1021, 1024 [2014], lv denied 23

NY3d 1038 [2014]; *People v Richard*, 30 AD3d 750, 755 [2006], *lv denied* 7 NY3d 869 [2006]). In any event, defendant's reliance on the merger doctrine is unavailing given that defendant's abduction and restraint of the victim was not "simultaneous and inseparable" from the other crime but, rather, it was "a crime in itself" (*People v Gonzalez*, 80 NY2d 146, 153 [1992]; *see People v Thorpe*, 141 AD3d 927, 932 [2016], *lv denied* 28 NY3d 1031 [2016]; *People v Leiva*, 59 AD3d 161, 161 [2009], *lv denied* 12 NY3d 818 [2009]; *People v Rosado*, 26 AD3d 532, 533 [2006], *lv denied* 7 NY3d 762 [2006]). To that end, any failure by defense counsel to preserve defendant's merger argument did not deprive defendant of meaningful representation (*see People v Hughes*, 114 AD3d at 1024; *People v Kruppenbacher*, 81 AD3d 1169, 1170-1171 [2011], *lv denied* 17 NY3d 797 [2011]).

Nor do we find any merit in defendant's contention that the failure by his counsel to preserve his contention that the verdict was not supported by legally sufficient evidence amounted to ineffective assistance (*see generally People v Colburn*, 123 AD3d 1292, 1297 [2014], *lv denied* 25 NY3d 950 [2015]). We also reject defendant's argument that his counsel was ineffective in failing to move to dismiss two counts of the indictment inasmuch as County Court sua sponte dismissed one of those counts and granted the People's motion to dismiss the other count. Furthermore, while defendant claims that his counsel did not meaningfully oppose the People's *Sandoval* application, counsel, in fact, argued that granting the application would "effectively muzzle [defendant's] defense." We also note that County Court fashioned a *Sandoval* compromise and did not permit the People to question defendant about all of the prior criminal convictions requested in their application (*see generally People v Cole*, 35 AD3d 911, 913 [2006], *lv denied* 8 NY3d 944 [2007]). Defendant's remaining criticisms are directed toward his counsel's trial strategies, but defendant's mere disagreement with them does not rise to the level of less than meaningful representation (*see People v Rivera*, 71 NY2d 705, 708-709 [1988]; *see generally People v Fletcher*, 309 AD2d 1085, 1086 [2003], *lv denied* 1 NY3d 571 [2003]). Where, as here, the record discloses that counsel vigorously cross-examined witnesses, attacked the veracity of the victim's credibility, made opening and closing statements and presented a witness on defendant's behalf, we cannot conclude that defendant received the ineffective assistance of counsel (*see People v Perry*, 148 AD3d 1224, 1225-1226 [2017]; *People v Ackerman*, 141 AD3d 948, 950-951 [2016], *lv denied* 28 NY3d 1181 [2017]; *People v Van Demps*, 118 AD3d 1146, 1148 [2014], *lv denied* 23 NY3d 1061 [2014]).

We reject defendant's claim that the imposed sentence was harsh and excessive. In light of the violent nature of the acts committed and defendant's prior criminal history, we perceive no extraordinary circumstances or an abuse of discretion warranting a modification of the sentence in the interest of justice (*see People v Bowman*, 139 AD3d 1251, 1254 [2016], *lv denied* 28 NY3d 927 [2016]; *People v Parker*, 127 AD3d 1425, 1429 [2015]; *People v Ferrer*, 113 AD3d 964, 966 [2014]).

Defendant's remaining contentions, to the extent not specifically addressed herein, have been examined and determined to be without merit.

Peters, P.J., Rose, Mulvey and Pritzker, JJ., concur. Ordered that the judgment is affirmed.