People v White (2024 NY Slip Op 05372)

People v White

2024 NY Slip Op 05372

Decided on October 31, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 31, 2024

113075
[*1]The People of the State of New York, Respondent,
v
Shaquille White, Appellant.

Calendar Date:September 9, 2024

Before:Clark, J.P., Pritzker, Ceresia, Fisher and Mackey, JJ.

Mitchell Kessler, Cohoes, for appellant.
P. David Soares, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the County Court of Albany County (Andra Ackerman, J.), rendered July 16, 2021, upon a verdict convicting defendant of the crimes of kidnapping in the second degree, assault in the second degree, strangulation in the second degree, rape in the first degree, criminal sexual act in the first degree and tampering with a witness in the fourth degree.
In 2020, defendant was charged by indictment with kidnapping in the second degree, assault in the second degree, strangulation in the second degree, rape in the first degree, criminal sexual act in the first degree and tampering with a witness in the fourth degree. After a jury trial, he was convicted as charged. At sentencing, County Court found defendant to be a second violent felony offender, and it sentenced him to a prison term of 25 years, to be followed by 15 years of postrelease supervision, on the rape in the first degree conviction, a consecutive prison term of 20 years on the kidnapping in the second degree conviction, to be followed by five years of postrelease supervision, and to lesser concurrent terms of incarceration on the remaining convictions. Defendant appeals.
Initially, defendant contends that the evidence is legally insufficient to support his conviction for kidnapping in the second degree and that all of the convictions are against the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, [this Court] view[s] the facts in the light most favorable to the People and examine[s] whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Bridges, 220 AD3d 1107, 1108 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1091 [2024]). "[W]hen conducting a weight of the evidence review, [this Court] must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Jenkins, 215 AD3d 1118, 1119 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 997 [2023]). Deference is afforded to the jury's credibility determinations when this Court conducts a weight of the evidence review (see People v Mansfield, 223 AD3d 1111, 1115 [3d Dept 2024], lv denied 42 NY3d 928 [2024]; People v Karnes, 223 AD3d 1119, 1122 [3d Dept 2024]), lv denied 42 NY3d 928 [2024].
As relevant here, "[a] person is guilty of kidnapping in the second degree when he [or she] abducts another person" (Penal Law § 135.20). "A person is guilty of assault in the second degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third [*2]person" (Penal Law § 120.05 [1]). A person is guilty of strangulation in the second degree when he or she "applies pressure on the throat or neck of such person" (Penal Law § 121.11 [a]) and it results in the "loss of consciousness for any period of time" (Penal Law § 121.12). "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion" (Penal Law former §130.35 [1]), which means compelling the act by using "physical force" (Penal Law § 130.00 [8] [a]). "A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct . . . with another person . . . [b]y forcible compulsion" (Penal Law former §130.50 [1]). Finally, "[a] person is guilty of tampering with a witness when, knowing that a person is or is about to be called as a witness in an action or proceeding, . . . he [or she] wrongfully induces or attempts to induce such person to absent himself [or herself] from, or otherwise to avoid or seek to avoid appearing or testifying at, such action or proceeding" (Penal Law § 215.10 [a]).
At trial, the victim testified that in May 2020, she met defendant at a "weed spot." Over the next few days, they became intimate and spent time together at an unfinished apartment the victim and her mother had rented in the Village of Waterford, Saratoga County. Five days into their relationship, which the victim considered to be casual, she called it off while she was with defendant in her Jeep at a gas station in the City of Cohoes, Albany County. After initially storming off, defendant returned and punched the victim in the face, breaking her jaw and dislodging several teeth. He threatened that he "was [not] going back to jail," that she was "fu**ing with his gangster" and that he would kill her. He then ordered her to get into her Jeep's passenger seat and drove them to the apartment, where he took her car keys and cell phone. At the apartment, defendant repeatedly punched the victim in the face, knocking her unconscious several times, forcibly performed oral sex on her, strangled her to the point that she lost consciousness, and had sexual intercourse with her by force. Defendant threatened to kill her several times throughout this ordeal and repeatedly ignored her pleas for medical assistance. Eventually, defendant agreed to let the victim leave, with him, but only after she promised not to tell anyone what had happened.
The victim's mother testified that on the date of the incident, the victim was with defendant, whom she had met "a couple of times." At some point during the day, she called the victim on her cell phone and "heard her screaming and crying" that she wanted to come home, then the call ended abruptly. After there was no answer when she tried again, she called the police. At the mother's request, the police went to the apartment but, by the time they arrived, the victim and defendant were no longer there. An hour or two later[*3], they appeared at the mother's residence in Cohoes, at which time the victim's "face was all bloody," her teeth were broken and she could not stand up straight. The mother testified that she immediately asked the victim and defendant what had happened, and defendant told her that the victim had been "jumped" by his ex-girlfriend. Defendant eventually drove the mother and the victim to and from the hospital. After they returned from the hospital, the victim told her mother what defendant had done to her, but neither of them immediately called the police out of fear that defendant would retaliate.
A neighbor testified that he saw the victim and defendant leave the apartment on the day of the incident and that the victim "did not look good." A physician at Albany Medical Center testified that he treated the victim when she arrived at the hospital. He testified that "she had bruising to her face, throat and her jaw was throbbing" and had neck bruising that was consistent with strangulation. Testing revealed that her jaw was fractured. The physician recalled that the victim told him "her boyfriend choked her during the assault" and "knocked [her] out" but she refused to allow him to call the police. Another physician testified that there were visible fractures on the victim's face, which resulted from "significant trauma."
The victim testified that she called the police four days after the incident and, in the days after that, observed one of defendant's brothers in an SUV "sitting outside of [her] apartment for hours." A friend of defendant also called the victim; he said that he was "calling for" defendant, told her not to testify, and promised "whatever [she] needed, money or weed" in exchange for her silence.
Regarding the issue of legal sufficiency concerning the kidnapping conviction, defendant argues that the evidence does not support a finding that he abducted the victim. As relevant here, the term "[a]bduct" is defined as "restrain[ing] a person with intent to prevent his [or her] liberation by either (a) secreting or holding him [or her] in a place where he [or she] is not likely to be found, or (b) using or threatening to use deadly physical force" (Penal Law § 135.00 [2]). Here, there was significant evidence to support a finding that the victim was secreted in a place in which she was unlikely to be found, both when she was riding in the Jeep and when she was in the unfinished apartment (see People v Delp, 156 AD3d 1450, 1452 [4th Dept 2017], lv denied 31 NY3d 983 [2018]; People v Manning, 151 AD3d 1936, 1937-1938 [4th Dept 2017], lv denied 30 NY3d 951 [2017]). Additionally, the victim testified that defendant accomplished his restraint by threatening to kill her. Certainly, viewed in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), the evidence is legally sufficient to support the kidnapping conviction.
Likewise, we find no merit to defendant's assertion that the verdict is against the weight of [*4]the evidence. Although a different verdict might not have been unreasonable, as the victim gave varying accounts of the incident, the issue of her credibility was fully explored at trial. There was nothing incredible or inherently unbelievable about the victim's testimony and she explained that her initial reluctance to identify defendant as the perpetrator stemmed from her fear of retaliation, which testimony the jury was free to credit. The victim's testimony as to the attack itself was certainly supported by physical evidence — she suffered a broken jaw, a concussion, several missing teeth and bruises all over her body. According due deference to the jury's resolution of credibility issues, we find no basis to disturb the verdict (see People v Cummings, 188 AD3d 1449, 1453 [3d Dept 2020], lv denied 36 NY3d 1096 [2021]; People v Hadfield, 119 AD3d 1217, 1220 [3d Dept 2014], lv denied 25 NY3d 989 [2015]; People v Reynolds, 81 AD3d 1166, 1167 [3d Dept 2011], lv denied 16 NY3d 898 [2011]).[FN1]
Defendant's contention that his conviction for kidnapping in the second degree is precluded under the merger doctrine is unpreserved and we decline to exercise our interest of justice jurisdiction to modify the judgment on that basis (see People v Bonilla, 229 AD3d 850, 853-854 [3d Dept 2024]). As an explanation for such determination, defendant's reliance on the merger doctrine is unavailing, given that his hours-long abduction and restraint of the victim was not "simultaneous and inseparable" from the other crimes but, rather, was "a crime in itself" (People v Gonzalez, 80 NY2d 146, 153 [1992]; see People v Place, 152 AD3d 976, 980 [3d Dept 2017], lv denied 30 NY3d 1063 [2017]; People v Thorpe, 141 AD3d 927, 932 [3d Dept 2016], lv denied 28 NY3d 1031 [2016]). To be sure, the evidence at trial demonstrated that defendant forcibly prevented the victim from leaving her Jeep by threatening her life and then transported her to the unfinished apartment, where he assaulted her to the point of unconsciousness, sodomized, raped and strangled her.
Finally, we reject defendant's contention that his sentence is unduly harsh and severe. Initially, defendant's argument that County Court punished him for invoking his constitutional right to testify at trial is unpreserved for this Court's review, as it was not raised at sentencing (see People v Martinez, 144 AD3d 1326, 1326 [3d Dept 2016], lv denied 28 NY3d 1186 [2017]). In any event, we have carefully reviewed the court's comments made during the sentencing proceeding and do not find that the court considered any inappropriate factors in imposing the sentence. A review of the record also reveals that County Court specifically considered defendant's traumatic childhood in imposing the sentence, while also giving due regard to his past criminal history and the brutality of his attack on the victim. Given the seriousness of defendant's conduct and the fact that the sentence imposed was less than the maximum allowable, we do [*5]not find that the sentence was unduly harsh or severe so as to warrant invoking our intent of justice jurisdiction to reduce it (see CPL 470.15 [6] [b]; People v King, 225 AD3d 937, 938 [3d Dept 2024]).
Accordingly, the judgment of conviction is in all respects affirmed.
Clark, J.P., Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Specific to the witness tampering conviction, the victim testified that an associate of defendant, who told her that he was "calling for" defendant, attempted to dissuade her from testifying by offering her financial rewards. Viewing the evidence in a neutral light, this conviction is also supported by the weight of the evidence (see People v Rahaman, 189 AD3d 1709, 1712 [3d Dept 2020], lv denied 36 NY3d 1059 [2021]).